o

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NADINE PARDUE, | Case No. EDCV 10-1830-DTB |
| Plaintiff, | |
| vs. | ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff filed a Complaint ("Complaint") on November 29, 2010, seeking review of the Commissioner's denial of her application for Supplemental Security Income. In accordance with the Magistrate Judge's Case Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on July 28, 2011. Thus, this matter now is ready for decision.[1]

/ / /

/ / /

---

[1]As the parties were advised in the Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR"), and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues here are as follows:

1.     Whether the Administrative Law Judge ("ALJ") properly evaluated plaintiff's credibility regarding excess pain.  (Jt. Stip. 4-24.)

2.     Whether the ALJ properly considered plaintiff's residual functional capacity ("RFC").  (Jt. Stip. 24-27.)

3.     Whether the ALJ properly considered vocational expert ("VE") testimony about work in the national economy. (Jt. Stip. 27-32.)


**DISCUSSION**

**I.     Reversal is warranted based on the ALJ's credibility evaluation.**

During the administrative hearing, plaintiff testified that she stopped working in December 2005 due to a vision problem caused when her "eye exploded" after a thorn from a creosote bush entered her retina in 1994.  (AR 24-25, 28.)  Plaintiff testified that she lived with the pain from that incident for many years before having surgery to remove the eye in 2007 and that since the surgery, she experiences "bad" pain below her left eye "[j]ust about every day," and takes "bottles and bottles" of pain medication to treat it.  (AR 28-29.)  Plaintiff described the pain she experiences in her right hip and leg area due to having an extra bone in her spine as "like a hammer hitting you or something like throbbing pain."  (AR 31.)  As a result of her impairments, plaintiff testified that (i) she spends much of her day in bed, (ii) can only stand for 30 minutes at a time, (iii) has difficulty sitting for long periods of time because of the pain in her foot and leg and because her right leg and foot often fall asleep when she sits, (iv) suffers feelings of depression, and (v) is able to do hardly any chores around the house.  (AR 30, 32, 34, 36.)

In the administrative decision, the ALJ found that while plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, her statements regarding the intensity, persistence and limiting effects of her symptoms

2

1   "are not credible to the extent they are inconsistent with the [ALJ's RFC]

2   assessment." (AR 14.)   The ALJ cited the following reasons for discounting

3   plaintiff's subjective pain testimony: (i) While plaintiff testified that she cannot stand

4   for longer than 30 minutes and that when she sits, her leg and foot fall asleep,

5   plaintiff also admitted that her symptoms are relieved when she elevates her leg; (ii)

6   plaintiff's various activities (going outside two-to-three times a day, preparing frozen

7   dinners, grocery shopping with her roommate, riding in a car, and playing basketball

8   with her son) are inconsistent with plaintiff's allegations that she is unable to do

9   things for herself, has to lie down and rest all day and passes out if she bends, lifts,

10   or walks, is not able to cook or drive, and cannot watch television, read, write or use

11   a computer; (iii) plaintiff's testimony that she has only an 8th grade education is

12   inconsistent with her assertion in her Disability Report that she completed the 11th

13   grade; and (iv) a Social Security Officer reported that plaintiff had no observable

14   problems with reading, concentrating, answering, sitting, standing, walking or using

15   her hands. (AR 13-14.)

16   Plaintiff asserts that this credibility evaluation was not supported by substantial

17   evidence because "none of [p]laintiff's statements about her daily activities were

18   inconsistent with her testimony about her impaired abilities to sit, stand, and walk."

19   (Jt. Stip. 7.)  This argument is supported by the record and warrants reversal of the

20   Commissioner's decision.

21   "Generally, 'questions of credibility and resolution of conflicts in the testimony

22   are functions solely' for the ALJ." Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007)

23   (quoting Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)).   To determine

24   whether a claimant's subjective symptom testimony is credible, the ALJ must engage

25   in a two-step analysis.  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir.

26   2007).  "First, the ALJ must determine whether the claimant has presented objective

27   medical evidence of an underlying impairment 'which could reasonably be expected

28   to produce the pain or other symptoms alleged.'"  Id. at 1036 (quoting Bunnell v.

3

1    Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  "Second, if the claimant
2    meets this first test, and there is no evidence of malingering, 'the ALJ can reject the
3    claimant's testimony about the severity of [his] symptoms only by offering specific,
4    clear and convincing reasons for doing so.'"  Id. (quoting Smolen v. Chater, 80 F.3d
5    1273, 1282 (9th Cir. 1996)).  An ALJ must "specifically identify" the testimony found
6    not credible and explain "what evidence undermines" the testimony.  Parra, 481 F.3d
7    at 750 (citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).  Because plaintiff's
8    record includes objective medical evidence establishing that he suffers from
9    impairments that could reasonably produce the symptoms of which he complains, and
10   there was no affirmative evidence of malingering, the "clear and convincing"
11   standard applies here.  See Carmickle v. Comm'r. Soc. Sec. Admin., 533 F.3d 1155,
12   1160 (9th Cir. 2008).

13          Under this standard, the reasons provided by the ALJ to discount plaintiff's
14   credibility were not clear and convincing.  The ALJ improperly discounted plaintiff's
15   subjective pain testimony as being inconsistent with her daily activities.  See Thomas
16   v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between the
17   claimant's testimony and the claimant's conduct supported rejection of the claimant's
18   credibility); Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies
19   between claimant's testimony and actions cited as a clear and convincing reason for
20   rejecting the claimant's testimony).  The mere fact that plaintiff carries on basic,
21   everyday activities while at home does not, and should not, detract from her
22   credibility, especially when there is no indication these activities take up a substantial
23   part of plaintiff's day.  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)
24   (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("One does not need to be
25   'utterly incapacitated' in order to be disabled.")  Further, there is no indication that
26   any of plaintiff's activities are "transferable to the work setting with regard to the
27   impact of pain." Vertigan, 260 F.3d at 1050.  The ALJ's assertion that plaintiff goes
28   outside two-to-three times per day is of little significance, since plaintiff stated that

4

she only goes out to her yard, and that she can no longer walk any further because she previously "passed out a couple of times in the desert" while out on walks. (AR 14, 36, 154.) Further, the ALJ's assertion that plaintiff prepares frozen dinners has little bearing since, as plaintiff noted in the Joint Stipulation, preparing a frozen dinner in the microwave is hardly akin to actual cooking, and thus it says little about plaintiff's functional capabilities. (AR 14.) (Jt. Stip. 13.) The ALJ's assertion that plaintiff played basketball with her son is belied by plaintiff's implication that this was a one-time occurrence, roughly three months prior to the hearing, and that while she tries to engage with her son, her son does not enjoy his time with her because she "sleeps a lot" when he comes to visit. (AR 13, 37, 45.) The ALJ's assertion that plaintiff is able to go the grocery store is likewise belied by plaintiff's testimony that she can only do so with help. (AR 14, 38.) As such, little – if any – evidence in the record supports the ALJ's finding that plaintiff lacked credibility because of her daily activities.

The ALJ's other assertions regarding internal inconsistencies within plaintiff's own statements and between plaintiff's statements and plaintiff's conduct are likewise without merit. See Light v. Soc. Sec. Admin, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct"). The ALJ's assertion that plaintiff's leg pain is "relieved by elevating her leg" is belied by the fact that while plaintiff testified that elevating her leg does "help" relieve her pain, she did not state that elevating her leg relieves the pain altogether. (AR 13, 33.) Further, the ALJ noted the conflict between plaintiff's hearing testimony, where she testified that she only went to school through the 8th grade, and plaintiff's Disability Report, where she stated that she went to school through the 11th grade. (AR 14, 27, 148.) However, the ALJ failed to provide clear and convincing reasons why this seemingly innocuous discrepancy, in and of itself, gave him reason to doubt plaintiff's credibility. Finally, the ALJ cited to the opinion

of a Social Security Officer who, on July 25, 2008, noted in the pre-printed form that plaintiff had "no observable problems" with reading, concentrating, answering, sitting, standing, walking or using her hands. (AR 14, 167.) However, the ALJ's observation is belied by the fact that he neglected to mention that the same Social Security Officer also observed that the plaintiff had difficulty seeing, and in the "observations" portion of the interview noted that "[plaintiff's] right eye was very red and irritated . . . [and] . . . watery and she stated that her vision is very blurry . . ." (AR 14, 167.)

In sum, the Commissioner's adverse credibility finding is not supported by clear and convincing reasons. See Lingenfelter, 504 F.3d at 1035-36. Accordingly, reversal is required.

## II.   Reversal is warranted based on the ALJ's RFC determination.

Following the Step Three finding, the ALJ determined that plaintiff had an RFC to perform "significant light work," with the pertinent exception that plaintiff "cannot see fine print without a magnifying glass." (AR 12.) The ALJ included this same limitation in the hypothetical he posed to the VE, noting that the hypothetical individual "[has] no vision in the left eye, and can't see the fine print without a magnifying glass . . ." (AR 46.)

RFC measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Frost v. Barnhart, 314 F.3d 359, 366 (9th Cir. 2002); Cooper v. Sullivan, 880 F.2d 1152, 1155, n.5 (9th Cir. 1989). An RFC assessment must take into account all of a claimant's medically determinable impairments and their resulting symptoms. Light, 119 F.3d at 793 ("In determining [a claimant's] [RFC], the ALJ must consider . . . the aggregate of [his or her] mental and physical impairments."); Social Security Ruling ("SSR") 96-8p, 1996 SSR

/ / /

1   LEXIS 5 at *13, 1996 WL 374184 at *5 ("The RFC assessment must be based on all
2   of the relevant evidence in the case record.")

3          Plaintiff's claim in Disputed Issue Two is that the ALJ's RFC determination
4   is erroneous because there is no evidence in the record supporting the ALJ's assertion
5   that plaintiff can read fine print even with a magnifying glass, an assertion the ALJ
6   also included in the hypothetical question he posed to the VE. (Jt. Stip. 24.)  In fact,
7   plaintiff testified that when she tries to read a newspaper, she can only read for five
8   minutes before "[her] eye starts jumping," suggesting a more severe visual
9   impairment than that suggested by the ALJ in his RFC determination.  (AR 42.); SSR
10  96-8p, 1996 SSR LEXIS 5 at *13-14, 1996 WL 374184 at *5 (The RFC assessment
11  must be based on all the evidence in the case record, and the ALJ must consider all
12  allegations of limitations and restrictions.)  Not only did the ALJ err when he reached
13  an RFC determination with no basis in the record, the ALJ also erred when he used
14  the same baseless visual limitation in his hypothetical to the VE. <u>Valentine</u>, 574 F.3d
15  at 690 (quoting <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988) ("The
16  hypothetical an ALJ poses to a [VE], which derives from the RFC, 'must set out *all*
17  the limitations and restrictions of the particular claimant.'")  Because plaintiff's
18  testimony about her sight impairment suggests a greater limitation than the one raised
19  by the ALJ in his hypothetical to the VE, the VE's opinion has no evidentiary value.
20  <u>See</u> <u>Tackett v. Comm'r, Soc. Sec. Admin.</u>, 180 F.3d 1094, 1101 (9th Cir. 1999); <u>see</u>
21  <u>also</u> <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 886 (9th Cir. 2006) (finding material
22  error where the ALJ posed an incomplete hypothetical question to the vocational
23  expert which ignored improperly-disregarded testimony suggesting greater
24  limitations); <u>Lewis v. Apfel</u>, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does
25  not support the assumptions in the hypothetical, the vocational expert's opinion has
26  no evidentiary value.").

27  / / /
28  / / /

III.   **The ALJ erred in his determination that plaintiff could perform the job of cleaner.**

As part of his RFC determination, the ALJ also noted that plaintiff "cannot have contact with the public and [she] can have occasional contact with supervisors and coworkers." (AR 12.)  The VE testified that a person with plaintiff's limitations and transferable skills could work as a "cleaner, housekeeping" (Dictionary of Occupational Titles ("DOT") § 323.687-014) and affirmed that her testimony was consistent with the description of that job in the DOT. (AR 46-49.)  The ALJ adopted the testimony of the VE to determine that plaintiff could perform work in the national economy and therefore was not disabled.  (AR 17.)

In Disputed Issue Three, plaintiff asserts that the ALJ's determination was erroneous because plaintiff's functional limitation against having contact with the public creates an unresolved conflict with the DOT's description for the job of "cleaner, housekeeping." (Jt. Stip. 27-29.)  In particular, plaintiff points out that the job requires plaintiff to "render[] personal assistance to patrons." (Jt. Stip. 28.)  In light of this requirement, plaintiff argues that performance of this job conflicts with plaintiff's limitation against having contact with the public.  Id.  This argument also warrants reversal of the Commissioner's decision.

At Step Five of the sequential evaluation, the burden of proof shifts to the Commissioner to identify specific jobs existing in substantial numbers in the national economy that the claimant can perform despite his identified limitations.  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).  One method of demonstrating the existence of these jobs is through the testimony of a VE, who can assess the effect of any limitation on the range of work at issue, identify jobs which are within the RFC, if they exist, and provide a statement of the incidence of such jobs in the region where the claimant lives or in several regions of the country.  Social Security Ruling ("SSR") 83-12, 1983 WL 31253 at 3.  On the other hand, in making disability determinations, the Commissioner relies primarily on the DOT for "information about

8

1   the requirements of work in the national economy." Massachi v. Astrue, 486 F.3d at

2   1149, 1153 (9th Cir. 2007) (quoting SSR 00-4p at 2) (internal quotation marks

3   omitted).  Accordingly, where there is a contradiction between the testimony of the

4   VE and the DOT, the ALJ may not rely on the VE's testimony unless the record

5   contains persuasive evidence to support the deviation. Id. at 1152 (citing Johnson,

6   60 F.3d at 1435).

7          Based in part on the VE's testimony, the ALJ determined that plaintiff had an

8   RFC for significant light work, with the pertinent exception that plaintiff "cannot

9   have contact with the public and [plaintiff] can have occasional contact with

10  supervisors and coworkers." (AR 12.)  The VE testified that in light of plaintiff's

11  identified limitations, she could perform the job of cleaner.  (AR 47.)  As plaintiff

12  notes, the DOT description for the job of cleaner requires the employee to "render[]

13  personal assistance to patrons," which appears to conflict with plaintiff's limitation

14  against having contact with the public.  (Jt. Stip. 28.)  Neither the VE nor the ALJ

15  attempted to explain or justify this apparent deviation in any manner.  See

16  Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (ALJ erred in finding that

17  claimant could return to past relevant work based on VE's testimony that deviated

18  from the DOT because ALJ "did not identify what aspect of the VE's experience

19  warranted deviation from the DOT, and did not point to any evidence in the record

20  other than the VE's sparse testimony . . .")  For this reason, the VE's testimony,

21  which the ALJ adopted, could not serve as substantial evidence supporting the ALJ's

22  Step Five determination.

23

24                                    **ORDER**

25         The law is well established that the decision whether to remand for further

26  proceedings or simply to award benefits is within the discretion of the Court.  See,

27  e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan,

28  888 F.2d 599, 603 (9th Cir. 1989); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir.

1981).  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004); where the record has been fully developed, <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, <u>Bilby v. Schweiker</u>, 762 F.2d 716, 719 (9th Cir. 1985) (per curiam) (as amended).

This is not an instance where no useful purpose would be served by further administrative proceedings.  The current record does not mandate a determination of disability, and outstanding issues remain before such a determination can be made.  As such, remand for further administrative proceedings is appropriate.  <u>See</u> <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1116 (9th Cir. 2003); <u>Connett</u>, 340 F.3d at 875.

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.

DATED: November 14, 2011

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

10